UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JACOB M. FISH, TOMICK T. COPELAND, AND
TAYLOR J. CLAYBROOK, individually, and on
behalf of all others similarly situated,

       *Plaintiffs,*

             *v.*                       Case No. 2:18-cv-350

ATTORNEY GENERAL BRAD D. SCHIMEL, FORMER
ATTORNEY GENERAL J.B. VAN HOLLEN, FORMER
DIRECTOR OF STATE COURTS J. DENIS MORAN,
FORMER DIRECTOR OF STATE COURTS A. JOHN
VOELKER, JUDICIAL ADMINISTRATIVE DISTRICT
CHIEF JUDGES MAXINE WHITE, JEFFREY
KREMERS, ALLAN B. TORHORST, MARY
WAGNER, RANDY R. KOSCHNICK, ROBERT
WIRTZ, JAMES P. DALEY, GREGORY
POTTER, JAMES J. DUVALL, JAMES
MORRISON, DONALD R. ZUIDMULDER, GREGORY
HUBER, NEAL NIELSEN, AND SCOTT NEEDHAM,
in their individual capacities,

       *Defendants.*

---

## CLASS ACTION COMPLAINT

---

       Plaintiffs Jacob M. Fish, Tomick T. Copeland, and Taylor J. Claybrook, on behalf

of themselves and a class of others similarly situated, by their attorneys, Strang Bradley,

LLC and People's Law Office, for their complaint against Defendants, state as follows:

### INTRODUCTION

       1.      In 2013, Defendant Wisconsin Attorney General J.B. Van Hollen requested

that the Wisconsin legislature amend the DNA surcharge law, WIS. STAT. § 973.046, to

require DNA samples to be collected from all individuals convicted of a crime so that their DNA could be analyzed and stored in the Department of Justice DNA database.

2. To fund this new expanded DNA collection program Defendant Van Hollen specifically requested that the new law require anyone convicted of a misdemeanor pay a $200 surcharge but not submit a DNA sample for a 15-month period to build up funding for the new DNA program, and then after the 15-month period of collecting surcharges but no DNA samples, the new law would require anyone convicted of a misdemeanor to both pay the $200 surcharge and submit a DNA sample for analysis and storage in the DNA database.

3. Defendant Van Hollen requested that the new DNA surcharge scheme be structured in this manner so that funding for the Department of Justice's expanded DNA analysis program would not have to come from the State of Wisconsin or the Department of Justice budget but instead from Plaintiffs and the proposed class members who were convicted of a misdemeanor and who did not have to submit a DNA sample for analysis over a 15-month period of time.

4. Defendant Van Hollen's scheme ensured that the Department of Justice would receive millions of dollars for doing nothing, so that it would have funding for its new DNA program so that 15 months later they would be able to handle the significant increase in DNA samples which all criminal defendants would be required to submit, starting April 1, 2015.

5. Prior to the new DNA surcharge law going into effect, Defendant Van Hollen knew that the new DNA surcharge law that he proposed was unconstitutional

because it was not rationally related to its stated purpose and it required individuals to pay the $200 DNA surcharge based on the conviction date rather than the date of the offense was committed. As applied to the Plaintiffs and class members, this was a classic *ex post facto* punishment in violation of Article I, Section 10 of the United States Constitution because the law increased the penalty for an offense after the offense has been committed.

6.      Despite this, the Wisconsin Department of Justice, under the supervision and direction of Defendant Van Hollen and his successor Defendant Brad Schimel, did nothing to stem the flow of millions of dollars, from Plaintiffs and class members, into the coffers of the Department of Justice, all the while knowing that the money they were receiving was being illegally taken from some of the most vulnerable and disadvantaged citizens of this state.

7.      Shortly before the new DNA surcharge law went into effect, Defendants Directors of State Court and Judicial Administrative District Chief Judges all became aware that the DNA surcharge law as applied to Plaintiffs and the class members violated the *ex post facto* clause, and they, along with Defendant Van Hollen and Schimel, each had a realistic opportunity, duty and the authority to prevent the violations of Plaintiffs' and the class members' constitutional rights, or to end the injury and cure the violations of Plaintiffs' and the class members' constitutional rights, yet failed to do so.

8.      In 2015, in *State v. Elward*, 866 N.W. 2d 756 (Wis. Ct. App. 2015), the Department of Justice, under Defendant Schimel, conceded that the new DNA

surcharge law was unconstitutional as applied to Plaintiffs and the class members and the Wisconsin Court of Appeals in *Elward* held that the DNA surcharge law was unconstitutional as applied, yet Defendants Schimel and the other named Defendants continued to fail to intervene to prevent the ongoing widespread illegal collection of DNA surcharges from Plaintiffs and the class members.

9.      This class action lawsuit, brought pursuant to 42 U.S.C. § 1983, seeks to redress the unconstitutional taking of money, pursuant to the DNA surcharge law, from Plaintiffs and a class of more than 10,000 similarly situated individuals who were convicted of misdemeanors in the State of Wisconsin from January 1, 2014 through April 1, 2015. Plaintiffs seek compensatory and punitive damages as set forth below.

## JURISDICTION AND VENUE

10.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1343(a)(3) (42 U.S.C. § 1983 jurisdiction).

11.      Venue is proper under 28 U.S.C. § 1391(b)(2). A substantial part of the events or omissions giving rise to the claims asserted herein occurred within this judicial district.

## PARTIES

12.      Plaintiff Jacob M. Fish is an adult who resides in West Allis, Wisconsin.

13.      Plaintiff Tomick T. Copeland is an adult who resides in Milwaukee, Wisconsin.

14.      Plaintiff Taylor J. Claybrook is an adult who resides in Racine, Wisconsin.

15.     Defendant Brad D. Schimel is the Attorney General of the State of Wisconsin. He has served as attorney general since January 5, 2015. As attorney general he is charged with the enforcement of the laws of the State of Wisconsin and the United States Constitution. Defendant Schimel is sued in his individual capacity and engaged in the conduct complained of under color of state law and in the course and scope of his employment.

16.     Defendant J.B. Van Hollen was the Attorney General of the State of Wisconsin from January 3, 2007 to January 5, 2015. As attorney general he was charged with the enforcement of the laws of the State of Wisconsin and the United States Constitution. Defendant Van Hollen is sued in his individual capacity and engaged in the conduct complained of under color of state law and in the course and scope of his employment.

17.     Defendant J. Denis Moran is the former Director of Wisconsin State Courts and he served in that capacity from June 2015 to August 2017. As director of state courts, he was the chief non-judicial officer of the state court system with the authority and responsibility for the overall management of the court system. Defendant Moran is sued in his individual capacity and engaged in the conduct complained of under color of state law and in the course and scope of his employment.

18.     Defendant A. John Voelker is the former Director of Wisconsin State Courts and he served in that capacity from 2003 to July 2014. As director of state courts, he was the chief non-judicial officer of the state court system with the authority and responsibility for the overall management of the court system. Defendant Voelker is

sued in his individual capacity and engaged in the conduct complained of under color of state law and in the course and scope of his employment.

19.     Defendants Maxine White, Jeffrey Kremers, Allan B. Torhorst, Mary Wagner, Randy R. Koschnick, Robert Wirtz, James P. Daley, Gregory Potter, James J. Duvall, James Morrison, Donald R. Zuidmulder, Gregory Huber, Neal Nielsen, and Scott Needham are the current and former chief judges for their respective judicial administrative district throughout the state and served in that capacity between January 1, 2014 and the filing of this complaint. As chief judges they are responsible for the administration of judicial business in circuit courts within their district, including its personnel and judges, are charged with establishing policies and plans within the judicial administrative district, including having the authority to direct the activities and operations of all clerk of court offices within the district. These Defendants are sued in their individual capacity and engaged in the conduct complained of under color of state law and in the course and scope of their employment.

## FACTS

20.     In September 2012, Defendant J.B. Van Hollen submitted the Wisconsin Department of Justice's 2013-2015 Biennium budget request, specifically requesting that the statutory language of WIS. STAT. § 973.046 be amended to require circuit courts to apply a DNA surcharge to defendants convicted of all felonies and misdemeanors.

21.     At the time, under WIS. STAT. § 973.046, DNA surcharges were discretionary for most felony convictions and were mandatory only in four select types of convictions.

22.     Defendant Van Hollen's request to amend the statute was part of a broader Department of Justice program to increase the collection and analysis of DNA samples from individuals convicted of a crime.

23.     Defendant Van Hollen and his staff successfully influenced the Wisconsin legislature to pass 2013 WIS. ACT 20 ("the Act"), which was published on July 1, 2013.

24.     Section 2355 of the Act instructed circuit courts to apply a $200 DNA surcharge for each conviction for a misdemeanor at the time of sentencing or placing an individual on probation.

25.     The Act called for circuit courts to begin applying the surcharge on January 1, 2014. However, the Act instructed the circuit courts that they could not order misdemeanants to provide a biological specimen for DNA analysis until April 1, 2015. 2013 WIS. ACT 20, § 9426(1)(am)-(bm).

26.     The Act created a period of 15 months between January 1, 2014 and April 1, 2015, where circuit courts were instructed to apply DNA surcharges to misdemeanants, but were not permitted to order misdemeanants to actually submit any DNA sample. This allowed the Department of Justice to collect millions of dollars without incurring any expense for analyzing DNA samples.

27.     The Act instructed circuit courts to apply the DNA surcharge for each conviction for a misdemeanor solely based on whether the individual was sentenced or placed on probation on or after January 1, 2014. The Act did not address the issue of when the misdemeanor offense occurred, or forego imposition of the DNA surcharge for people who committed an offense prior to January 1, 2014.

28. Plaintiffs and class members in this action committed an offense prior to January 1, 2014, for which they were subsequently criminally charged and convicted of a misdemeanor. Plaintiffs and class members were then either sentenced or placed on probation for said misdemeanor conviction between January 1, 2014 and April 1, 2015. The unconstitutional DNA surcharge law required Plaintiffs and class members to pay a $200 DNA surcharge, but not submit any DNA sample for analysis.

29. The DNA surcharges collected from misdemeanants by clerks of court are required to be transferred first to the county treasurer, then to the secretary of the Department of Administration. WIS. STATS. §§ 973.046(2), 59.40(2)(m), and 59.25(3)(f)2. The secretary of the Department of Administration is then required to transfer the DNA surcharge money to the Department of Justice to be used specifically for performing DNA analyses and maintaining a DNA database. WIS. STATS. §§ 973.046(3), 20.455(2)(Lm), and 165.77.

30. The DNA surcharge that the Act instructed circuit court judges to apply to the Plaintiffs and class members is a punitive fine rather than a fee because it bears no rational connection to the cost of performing DNA analysis and maintaining a DNA database, as the Plaintiffs and class members could not be ordered to submit any DNA sample.

31. The Act's retroactive application of the DNA surcharge, as applied to the Plaintiffs and class members, inflicted a greater punishment than the law annexed to the crime at the time the violation was committed and thus constituted an *ex post facto*

punishment in violation of Article I, Section 10 of the United States Constitution and the Fourteenth Amendment to the United States Constitution.

### *Defendants Van Hollen and Schimel*

32.     Defendants Van Hollen and Schimel are the former and current Attorney General of the State of Wisconsin. As attorneys general they are the chief law enforcement officer of the State of Wisconsin and head of the Department of Justice. They have the responsibility and authority to establish policies and procedures within the Department of Justice, including the ability to instruct those under their supervision such as Department of Justice prosecutors, district attorneys and assistant district attorneys throughout the state.

33.     Before the Act was passed, Defendant Van Hollen specifically requested that the Act mandate imposition of the DNA surcharge upon conviction without any consideration as to when the underlying act occurred; he specifically requested that the surcharge be imposed regardless of whether the individual provides a DNA sample; and he specifically requested the 15-month delay between when the surcharge began to apply but no DNA samples were to be collected and when the DNA samples were to begin being collected.

34.     Defendant Van Hollen requested that the new DNA surcharge scheme be structured in this manner so that funding for the Department of Justice's new DNA analysis program would not have to come from the State of Wisconsin or the Department of Justice Budget but instead from Plaintiffs and class members who were

convicted of a misdemeanor and who did not have to submit a DNA sample for analysis over a 15-month period of time.

35.     Defendant Van Hollen's scheme ensured that the Department of Justice would receive millions of dollars for doing nothing, so that it would have funding for its new DNA program and be able to handle the significant increase in DNA samples which all criminal defendants would be required to submit, starting April 1, 2015.

36.     At the time the Act was passed, Defendant Van Hollen knew that the Act would violate the constitutional rights of class members who committed an offense prior to January 1, 2014, for which they were subsequently criminally charged and convicted of a misdemeanor between January 1, 2014 and April 1, 2015.

37.     On December 30, 2013, prior to the effective date of the Act, Dodge County Assistant District Attorney Robert Barrington sent an email to all prosecutors throughout the state, including some prosecutors at the Department of Justice, asking whether the new DNA surcharge was triggered by the offense date or the conviction date.

38.     In response to the above question, on January 7, 2014, Roy R. Korte, the director of the criminal litigation unit of the Wisconsin Department of Justice, acting under the supervision and at the direction of Defendant Van Hollen, sent an email to all prosecutors throughout the state informing them that the new law required the $200 DNA surcharge to be applied for each conviction.  Korte attached and referenced a memo from Defendant Director of State Courts A. John Voelker that identified the *ex post facto* problem with imposing the new DNA surcharge on individuals who

committed an offense prior to January 1, 2014. Korte also attached an unpublished Wisconsin court of appeals decision along with portions of the state's brief authored by the Department of Justice in which the Department of Justice conceded that the imposition of a DNA surcharge in a similar but slightly different factual scenario constituted an *ex post facto* punishment because the surcharge added more burdensome punishment than the law annexed to the crime at the time the violation was committed. Korte ended his email to all prosecutors confirming that the Department of Justice is seeking a legislative fix to make some corrections to the new DNA surcharge law.

39.     On January 13, 2014, Defendant Director of State Courts Voelker met with senior staff of the Department of Justice and discussed the *ex post facto* violation caused by the new DNA surcharge statute. Defendant Van Hollen either attended the meeting or was made aware of the topics that were raised by Defendant Voelker at the meeting.

40.     In February 2014, senior staff of the Department of Justice, at the direction and under the supervision of Defendant Van Hollen, discussed with the staff of State Senators Sheila Harsdorf and Jerry Petrowski certain changes that the Department of Justice would like to make to the recently enacted DNA surcharge law.

41.     On March 11, 2014, State Senators Harsdorf and Petrowski introduced the changes that were requested by the Department of Justice by offering Senate Amendment 4 to Senate Bill 373. Those changes did not include a fix for the *ex post facto* problem associated with the recently enacted DNA surcharge law.

42.     Defendant Van Hollen was either personally involved in or aware of the decision not to include a fix for the *ex post facto* problem in Senate Amendment 4 to Senate Bill 373.

43.     From January 1, 2014 to the time he left office on January 5, 2015, Defendant Van Hollen knew that circuit courts throughout the state were engaged in a widespread pattern and practice of applying the new DNA surcharge law, which constituted an *ex post facto* penalty in violation of Plaintiffs' and the class members' constitutional rights.

44.     From January 1, 2014 to the time he left office on January 5, 2015, Defendant Van Hollen knew that the Department of Corrections and clerks of court throughout the state were engaged in a widespread pattern and practice of collecting funds from Plaintiffs and class members based on the application of the unconstitutional DNA surcharge law and thus inflicting an *ex post facto* punishment on class members in violation of their constitutional rights.

45.     From January 1, 2014 to the time he left office on January 5, 2015, Defendant Van Hollen knew that circuit courts throughout the state were engaged in a widespread pattern and practice of issuing arrest and commitment orders and ordering the arrest and imprisonment of Plaintiffs and class members pursuant to WIS. STAT. § 973.07 because they had an outstanding balance due as a result of the unconstitutional DNA surcharge law that was applied to them.

46.     When Defendant Brad Schimel succeeded Defendant Van Hollen as Wisconsin Attorney General in January 2015, he was aware that the Act had been

violating and would continue to violate the constitutional rights of individuals who committed an act prior to January 1, 2014, for which they were subsequently criminally charged and convicted of a misdemeanor between January 1, 2014 and April 1, 2015.

47. When Defendant Schimel took office, he knew that circuit courts throughout the state were engaged in a widespread pattern and practice of applying the new DNA surcharge law, which constituted an *ex post facto* penalty in violation of Plaintiffs' and the class members' constitutional rights.

48. When Defendant Schimel took office, he knew that the Department of Corrections and clerks of court throughout the state were engaged in a widespread pattern and practice of collecting funds from Plaintiffs and class members based on the application of the unconstitutional DNA surcharge law and thus inflicting an *ex post facto* punishment on class members in violation of their constitutional rights.

49. When Defendant Schimel took office, he knew that circuit courts throughout the state were engaged in a widespread pattern and practice of issuing arrest and commitment orders and ordering the arrest and imprisonment of Plaintiffs and class members pursuant to WIS. STAT. § 973.07 because they had an outstanding balance due as a result of the unconstitutional DNA surcharge law that was applied to them.

50. At all times relevant to this Complaint, Defendants Van Hollen and Schimel knew that the funds collected from Plaintiffs and the class members based on the unconstitutional DNA surcharge law were being transferred to and used by the Department of Justice.

51. The Department of Justice's continued possession and use of the unconstitutionally collected DNA surcharges were instrumental in inflicting the injury on Plaintiffs and the class members in violation of their constitutional rights.

52. Defendants Van Hollen and Schimel had a realistic opportunity, duty, and the authority to prevent the violations of Plaintiffs' and the class members' constitutional rights, or to end the injury and cure the constitutional violations of Plaintiffs' and the class members' constitutional rights by, among other things:

    a. proposing, requesting and coordinating with the legislature to amend the statutory language of WIS. STAT. § 973.046 to exclude the imposition of DNA surcharges from Plaintiffs and class members because it violated their constitutional rights;

    b. issuing a letter or opinion that applying the new DNA surcharge law to Plaintiffs and class members violated their constitutional rights;

    c. implementing rules, policies or orders that Department of Justice prosecutors, district attorneys and assistant district attorneys throughout the state that at the time of sentencing or ordering probation for Plaintiffs and class members, the Department of Justice prosecutors, district attorneys and assistant district attorneys should inform the court that applying the new DNA surcharge law to Plaintiffs and class members is an unconstitutional *ex post facto* punishment;

d.  instructing and coordinating with Department of Justice prosecutors, district attorneys and assistant district attorneys throughout the state that for the Plaintiffs and class members where the unconstitutional DNA surcharge law had already been applied, they should file a motion requesting that the clerks of court refund the unconstitutionally collected DNA surcharges to Plaintiffs and class members;

e.  making an appearance themselves or instructing a deputy to make an appearance in all cases of Plaintiffs and class members and for the cases in which the unconstitutional DNA surcharge law had already been applied filing a motion requesting that the clerks of court refund the unconstitutionally collected DNA surcharges to Plaintiffs and class members;

f.  ordering the return of the DNA surcharges that the Department of Justice received to the Plaintiffs and class members, thereby ending the injury and curing the violation of Plaintiffs and class members constitutional rights.

53.  Defendants Van Hollen and Schimel's failure to act, including but not limited to their failure to take any of the above-mentioned actions, and their failure to properly supervise and train Department of Justice prosecutors, district attorneys and assistant district attorneys throughout the state as set forth above, violated Plaintiffs' and the class members' constitutional rights and caused their injuries.

54.     Defendants Van Hollen and Schimel knew that their failure to intervene and failure to supervise and train Department of Justice prosecutors, district attorneys and assistant district attorneys throughout the state would result in the application of the unconstitutional DNA surcharge law in violation of Plaintiffs' and class members' constitutional rights.

55.     On February 6, 2015, the State of Wisconsin, by the Ozaukee County District Attorney acting under the supervision and direction of Defendant Schimel pursuant to WIS. STAT. §§ 165.25(1) and 978.05(5), conceded in a public court filing to the Wisconsin Court of Appeals in the case *State v. Elward*, 866 N.W.2d 756 (Wis. Ct. App. 2015), that the new DNA surcharge law, as applied to the class of individuals that includes the Plaintiffs and class members in this action was unconstitutional and violated their constitutional rights.

56.     Specifically, the State's brief conceded that "the DNA surcharge violates the *ex post facto* clause when applied to defendants like Elward whose offense date preceeds [sic] the surcharge's January 1, 2014, effective date and who are convicted before the April 1, 2015, effective date for collecting DNA samples." Brief of Plaintiff-Respondent, *State v. Elward*.

57.     On May 20, 2015, the Wisconsin Court of Appeals decided *State v. Elward*, accepting the state's concession and holding that the new DNA surcharge law, as applied to the class of individuals that includes the Plaintiffs in this action was an unconstitutional *ex post facto* violation.

58.     Despite the concession by the State of Wisconsin and Department of Justice that the new DNA surcharge law, as applied to the Plaintiffs and class members, violated their constitutional rights, and despite the Wisconsin Court of Appeals' confirmation of that concession in *State v. Elward*, Defendant Schimel continued to fail to act or intervene to prevent the widespread application of the new DNA surcharge law throughout the state in violation of Plaintiffs' and the class members' constitutional rights.

59.     As of the date of filing this Complaint, more than three years after the Department of Justice, under the direction of Defendant Schimel, acknowledged this illegal activity, Schimel continues to keep the illegally obtained money instead of returning it to the people it was wrongfully taken from.

### Defendants Moran and Voelker

60.     The director of state courts is the chief non-judicial officer of the court system in the State of Wisconsin. The director of state courts has the authority and responsibility for the overall management of the unified judicial system with the specific responsibility for judicial education. The director of state courts has the authority to recommend changes in trial court administration to the chief judge of any judicial administrative district and the chief judge is required to cooperate with the director of state courts in carrying out his administrative duties. The director of state courts supervises circuit court judges and clerks of court throughout the state.

61.     On July 1, 2013, Defendant Director of State Courts A. John Voelker sent a memo to all circuit court judges and clerks of circuit court throughout the state

informing them that imposition of the DNA surcharge was mandatory under the new law, and required judges to impose the $200 surcharge upon Plaintiffs and class members.

62.     On December 27, 2013, Defendant Voelker sent a memo to all circuit court judges and clerks of court throughout the state discussing the new DNA surcharge law and the specific requirement that the surcharge be applied based on the conviction date and not the offense date. Voelker noted that surcharge statutes are usually applied based on the offense date so as not to violate the constitutional prohibition on *ex post facto* punishment and, for that reason, the CCAP financial software is programmed to apply surcharges based on the offense date rather than the conviction date. Despite knowing it was an *ex post facto* punishment, Voelker specifically instructed all circuit court judges and clerks of court throughout the state on how they could bypass the protections or obstacles within the CCAP software program by entering the $200 DNA surcharge manually for cases where the offense date was prior to January 1, 2014, but the conviction occurred after January 1, 2014.

63.     On January 13, 2014, Defendant Voelker met with the Department of Justice to discuss problems related to the new DNA surcharge law. Defendant Voelker and the Department of Justice discussed the fact that the new DNA surcharge law, as applied to Plaintiffs and class members, constituted an *ex post facto* violation. Upon information and belief, Defendant Voelker discussed with the Department of Justice that, although the statute instructed circuit court judges to impose the DNA surcharge for each misdemeanor conviction, at a meeting with the Chief Judges the previous

week, the Chief Judges decided that they would impose the DNA surcharge per case and based on the conviction date, despite the *ex post facto* problem.

64. From at least the time the Act was published on July 1, 2013 to the time he left office in July 2014, Defendant Voelker knew that: (1) the Act would violate and was violating the constitutional rights of individuals who committed an act prior to January 1, 2014, for which they were subsequently criminally charged and convicted of a misdemeanor between January 1, 2014 and April 1, 2015; (2) circuit courts throughout the state were engaged in a widespread pattern and practice of applying the new DNA surcharge law, which constituted an *ex post facto* punishment in violation of Plaintiffs' and the class members' constitutional rights; (3) the Department of Corrections and clerks of court throughout the state were engaged in a widespread pattern and practice of collecting funds from Plaintiffs and class members based on the application of the unconstitutional DNA surcharge law and thus inflicting an *ex post facto* punishment on class members in violation of their constitutional rights; and (4) circuit courts throughout the state were engaged in a widespread pattern and practice of issuing arrest and commitment orders and ordering the arrest and imprisonment of Plaintiffs and class members pursuant to WIS. STAT. § 973.07 because they had an outstanding balance due as a result of the unconstitutional DNA surcharge law that was applied to them.

65. From the time he took office in June 2015 to the time he left office in August 2017, Defendant Moran knew that: (1) the Act would violate and was violating the constitutional rights of individuals who committed an act prior to January 1, 2014,

for which they were subsequently criminally charged and convicted of a misdemeanor between January 1, 2014 and April 1, 2015; (2) circuit courts throughout the state were engaged in a widespread pattern and practice of applying the new DNA surcharge law, which constituted an *ex post facto* penalty in violation of Plaintiffs' and the class members' constitutional rights; (3) the Department of Corrections and clerks of court throughout the state were engaged in a widespread pattern and practice of collecting funds from Plaintiffs and class members based on the application of the unconstitutional DNA surcharge law and thus inflicting an *ex post facto* punishment on class members in violation of their constitutional rights; and (4) circuit courts throughout the state were engaged in a widespread pattern and practice of issuing arrest and commitment orders and ordering the arrest and imprisonment of Plaintiffs and class members pursuant to WIS. STAT. § 973.07 because they had an outstanding balance due as a result of the unconstitutional DNA surcharge law that was applied to them.

66.     Defendant Voelker had a realistic opportunity, duty and the authority to prevent the violations of Plaintiffs' and the class members' constitutional rights by, among other things, implementing rules, policies or orders that chief judges and circuit court judges should not impose a DNA surcharge on Plaintiffs and class members because the application of the new DNA surcharge law on individuals who committed an act prior to January 1, 2014, for which they were subsequently criminally charged and convicted of a misdemeanor between January 1, 2014 and April 1, 2015, violated their constitutional rights.

67.     Defendants Moran and Voelker had a realistic opportunity, duty and the authority to prevent the violations of Plaintiffs' and the class members' constitutional rights, or to end the injury and cure the constitutional violations of Plaintiffs' and the class members' constitutional rights by, among other things:

a. implementing rules, policies or orders that the clerks of court are to return the collected DNA surcharges to Plaintiffs and the class members, thereby ending the injury and curing the violation of Plaintiffs' and class members' constitutional rights;

b. implementing rules, policies or orders that chief judges and circuit court judges are not to issue or are to cancel any arrest and commitment orders for unpaid balances based on the unconstitutional DNA surcharge law.

68.     Defendants Moran and Voelker's failure to act, including but not limited to their failure to take any of the above-mentioned actions, and their failure to supervise and train circuit court judges and clerks of court throughout the state as set forth above, violated Plaintiffs' and the class members' constitutional rights and caused their injuries.

69.     Defendants Moran and Voelker knew that their failure to intervene and failure to supervise and train circuit court judges and clerks of court throughout the state as set forth above would result in violations of Plaintiffs' and class members' constitutional rights.

*Defendant Judicial Administrative District Chief Judges*

70.     Each chief judge is the administrative chief of the judicial administrative district within the state and is responsible for the administration of judicial business in circuit courts within the district, including its personnel and judges. The chief judge has the full administrative power of the judicial branch of government within the district, subject to the administrative control of the supreme court, and has a duty to establish policies and procedures within the judicial administrative district. The chief judge's authority includes the ability to order that his or her directives, policies and rules be carried out by personnel, including judges, within the district and to direct and make changes to the activities and operations of all clerk of court offices within the district. Chief Judges supervise circuit court judges and clerks of court throughout the state.

71.     Defendant Chief Judges Allan B. Torhorst, Mary Wagner, Randy R. Koschnick, Robert Wirtz, James P. Daley, Gregory Potter, Donald R. Zuidmulder, Gregory Huber, Neal Nielsen, and Scott Needham were personally involved in applying the unconstitutional DNA surcharge law in violation of Plaintiffs' and class members' rights.

72.     At all times relevant to this Complaint, Defendant Chief Judges knew that: (1) the Act would violate and was violating the constitutional rights of individuals who committed an act prior to January 1, 2014, for which they were subsequently criminally charged and convicted of a misdemeanor between January 1, 2014 and April 1, 2015; (2) circuit courts throughout the state were engaged in a widespread pattern and practice of applying the new DNA surcharge law, which constituted an *ex post facto* penalty in

violation of Plaintiffs' and the class members' constitutional rights; (3) the Department of Corrections and clerks of court throughout the state were engaged in a widespread pattern and practice of collecting funds from Plaintiffs and class members based on the application of the unconstitutional DNA surcharge law and thus inflicting an *ex post facto* punishment on class members in violation of their constitutional rights; and (4) circuit courts throughout the state were engaged in a widespread pattern and practice of issuing arrest and commitment orders and ordering the arrest and imprisonment of Plaintiffs and class members pursuant to WIS. STAT. § 973.07 because they had an outstanding balance due as a result of the unconstitutional DNA surcharge law that was applied to them.

73.     Specifically, on January 10, 2014, Defendant Chief Judges Jeffrey Kremers, Mary Wagner, Randy Koschnick, Robert Wirtz, James Daley, Gregory Potter, James Duvall, Donald Zuidmulder, Neal Nielsen, and Scott Needham and District Court Administrators Bruce Harvey, Kerry Connelly, Mike Neimon, Jon Bellows, Gail Richardson, Ron Ledford, Pat Brummond, Susan Byrnes, and Scott Johnson met with Defendant Director of State Courts Voelker in Madison and discussed the new DNA surcharge law.  During this meeting, Defendant Voelker told the group that Defendant Van Hollen was aware of the *ex post facto* problem with the new DNA surcharge law. Voelker discussed the constitutional prohibition against increasing the punishment for a crime after it has already been committed and explained that as it related to the new DNA surcharge law, the problem would subside over time as cases get processed. Chief Judge Needham informed the group that the Chippewa County judges decided to not

follow the new DNA surcharge law unless the offense was committed on or after January 1, 2014, so as to not impose an *ex post facto* punishment. Chief Judge Kremers informed the group that judges in Milwaukee County are generally taking the position that the new DNA surcharge law should not be followed unless the offense was committed on or after January 1, 2014, so as to not impose an *ex post facto* punishment. Nevertheless, Defendant Chief Judges collectively decided that, although the statute instructed the circuit court judges to impose the DNA surcharge for each misdemeanor conviction, they would impose the DNA surcharge per case and based on the conviction date.

74.     On January 16, 2014, the Kenosha County Circuit Court along with Kenosha Clerk of Court Rebecca Matoska-Mentink and Kenosha County District Attorney Robert Zapf held a meeting that was chaired by Defendant Chief Judge Wagner in which they discussed the new DNA surcharge law. The group discussed the fact that that the Chief Judges recently met to discuss the issue; that the new DNA surcharge law was proposed by the Attorney General; and that the law required the DNA surcharge to be applied to every count in which there is a conviction. Chief Judge Wagner recommended that Kenosha County Circuit Court judges apply the new DNA surcharge law once per case rather than as the law is written, which requires a DNA surcharge to be applied to each count within a case. District Attorney Robert Zapf discussed with the group whether the new DNA surcharge was an *ex post facto* punishment for those who committed an offense prior to the law's January 1, 2014 effective date. Despite being aware of the *ex post facto* problem caused by the new DNA

surcharge law as applied to Plaintiffs and class members, the judges agreed at this meeting that they would impose the new DNA surcharge on any conviction after January 1, 2014, regardless of whether the date of the offense was before January 1, 2014.

75.     On March 14, 2014, Defendant Chief Judges Jeffrey Kremers, Mary Wagner, Randy Koschnick, Robert Wirtz, James Daley, Gregory Potter, James Duvall, Donald Zuidmulder, and Neal Nielson met with certain district court administrators and Defendant Director of State Courts Voelker in Madison to discuss the new DNA surcharge law. The group discussed that the Department of Justice had requested that the legislature amend certain parts of the new DNA surcharge law, which were introduced as Senate Amendment 4 to Senate Bill 373. Defendant Voelker told the group that the Department of Justice's proposed specific amendments would simplify the DNA collection notification process among agencies and the Department of Justice. Voelker specifically discussed with the group that the Department of Justice's proposed amendments to the legislature did not address the *ex post facto* problem with the DNA surcharge law.

76.     Defendant Chief Judges Jeffrey Kremers, Mary K. Wagner, Allan Torhorst, Randy Koschnick, Robert Wirtz, James P. Daley, Gregory Potter, James J. Duvall, Don Zuidmulder, Neal Nielsen, and Scott Needham had a realistic opportunity, duty and the authority to prevent the violations of Plaintiffs' and the class members' constitutional rights, or to end the injury and cure the violations of Plaintiffs' and the class members' constitutional rights by, among other things, implementing rules,

policies or orders that circuit court judges in their district should not impose a DNA surcharge on Plaintiffs and class members because imposition of DNA surcharges on individuals who committed an act prior to January 1, 2014, for which they were subsequently criminally charged and convicted of a misdemeanor between January 1, 2014 and April 1, 2015 violated their constitutional rights.

77.     Defendant Chief Judges had a realistic opportunity, duty and the authority to prevent the violations of Plaintiffs' and the class members' constitutional rights, or to end the injury and cure the violations of Plaintiffs' and the class members' constitutional rights by, among other things:

   a.   implementing rules, policies or orders that the clerks of court are to return the collected DNA surcharges to Plaintiffs and the class members, thereby ending the injury and curing the violation of Plaintiffs' and class members' constitutional rights;

   b.   implementing rules, policies or orders that circuit court judges are not to issue or are to cancel any arrest and commitment orders for unpaid balances based on the unconstitutional DNA surcharge law.

78.     The corrective actions taken by Chippewa County Circuit Court Judges Roderick A. Cameron, James M. Isaacson, and Steven R. Cray provide one example of what Chief Judges could have done themselves or ordered circuit court judges under their supervision and within their district to do.  Specifically, On January 7, 2014, Chippewa County Circuit Court Judges Cameron, Isaacson, and Cray agreed that they had the authority and obligation to disregard laws that are unconstitutional and issued

a written order that for all cases in the Circuit Court of Chippewa County, the new DNA surcharge law shall not be applied for offenses that occurred prior to January 1, 2014 because applying the new DNA surcharge law to individuals who committed offenses before January 1, 2014 increases the penalty for an offense after the offense has been committed and is an *ex post facto* law prohibited by the United States Constitution.

79.     The corrective actions taken by Jefferson County Circuit Court Judge Jennifer L. Weston provide another example of what Chief Judges could have done themselves or ordered circuit court judges and clerks of court under their supervision and within their district to do.  Specifically, from approximately March 2016 through May 2016, Judge Weston issued orders to reverse the application of the new DNA surcharge law for class members in which she was personally involved in applying the unconstitutional DNA surcharge law. She ordered the clerk of court to return the unconstitutionally collected DNA surcharges based on the new DNA surcharge law as soon as reasonably practicable. Specifically, on April 12, 2016, Judge Weston ordered the clerk of court to refund the unconstitutionally collected DNA surcharge in Case Number 2013CT000293.  On May 16, 2016, the Jefferson County Clerk of Court issued a refund check for the unconstitutionally collected DNA surcharge in the amount of $200 to the defendant in Case Number 2013CT000293. Judge Weston and the Jefferson County Clerk of Court took the same action in other cases in which she applied the unconstitutional DNA surcharge law.

80.     The corrective actions taken by Shawano County Clerk of Circuit Court Susan Krueger provide another example of what Chief Judges could have ordered

clerks of court under their supervision and within their district to do. Specifically, from approximately August 2015 through October 2015, Shawano County Clerk of Circuit Court Susan Krueger, amended the records of her office removing any outstanding balance due based on the unconstitutional DNA surcharges applied to class members.

81.     Defendant Chief Judges' failure to act, including but not limited to their failure to take any of the above-mentioned actions, and their failure to supervise and train circuit court judges and clerks of court throughout the state as set forth above, violated Plaintiffs' and the class members' constitutional rights and caused their injuries.

82.     Defendants Chief Judges knew that their failure to intervene and failure to supervise and train circuit court judges and clerks of court throughout the state as set forth above would result in violations of Plaintiffs' and class members' constitutional rights.

### *The Defendants' Misconduct Was Committed in Furtherance of a Conspiracy*

83.     All of the named individual Defendants, acting jointly with circuit court judges, Department of Justice prosecutors, district attorneys and assistant district attorneys throughout the state, together reached an understanding, engaged in an ongoing course of conduct and joint action and otherwise conspired and continue to conspire among and between themselves to fund the Department of Justice DNA analysis program by unlawful means in violation of Plaintiffs' and the class members' constitutional rights. This conspiracy is evidenced, *inter alia*, by the overt actions and inactions set forth above and below. By and through the overt actions and inactions set

forth above and below, each and every Defendant, jointly and in conspiracy, with a shared understanding, intent, and/or meeting of the minds, funded the Department of Justice DNA analysis program by unlawful means and in doing so deprived, and continue to deprive, Plaintiffs and the class members of their constitutional rights, including their right to be free from an *ex post facto* punishment, and deprivation of property without procedural and substantive due process, all as protected by the Article I Section 10 and the Fourteenth Amendments to the United States Constitution.

### *The Named Plaintiffs*

84.     Plaintiff Jacob M. Fish was charged in Milwaukee County Case No. 2013CF002683 for committing an act on June 10, 2013. On May 13, 2014, Fish was prosecuted by assistant district attorney Karl Hayes and sentenced by Judge Ellen Brostrom for a misdemeanor conviction and ordered to pay a zero dollar fine and costs. Pursuant to the new DNA surcharge law, Fish paid the $200 DNA surcharge, but was not ordered to and did not submit a DNA sample.

85.     Plaintiff Tomick T. Copeland was charged in Milwaukee County Case No. 2013CF004215 for committing an act on September 7, 2013. On March 24, 2014, Copeland was prosecuted by assistant district attorney Janet Protasiewicz and sentenced by Judge Timothy Witkowiak for a misdemeanor conviction and ordered to pay a zero dollar fine and costs. Pursuant to the new DNA surcharge law, Copeland paid the $200 DNA surcharge, but was not ordered to and did not submit a DNA sample.

86.    Plaintiff Taylor J. Claybrook was charged in Racine County Case No. 2013CM002414 for committing an act on November 13, 2013. On February 3, 2014, Claybrook was prosecuted by assistant district attorney Jeremy Arn and sentenced by judge Emily Mueller for a misdemeanor conviction and ordered to pay a $200 fine and costs. Pursuant to the new DNA surcharge law, Claybrook was required to pay the $200 DNA surcharge, but was not ordered to and did not submit a DNA sample. However, Claybrook did not pay the $200 DNA surcharge. On May 12, 2015, an arrest and commitment order was issued ordering the arrest of Claybrook for failure to pay the outstanding fine and DNA surcharge. On July 21, 2015, Claybrook was arrested and imprisoned in jail for 10 days based on his failure to pay his outstanding fine and court costs, which included an unpaid portion of the $200 DNA surcharge, the 10 days serviced equal approximately one day of jail for every $50 of his fine and DNA surcharge outstanding pursuant to WIS. STAT. § 973.07. Claybrook served two days in jail based on the illegally imposed $200 DNA surcharge.

*Class Allegations*

87.    Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Rule 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a two classes defined as:

**Paid Class**
Plaintiffs Jacob M. Fish and Tomick T. Copeland seek to represent a class of individuals who were either sentenced or placed on probation by a Wisconsin circuit court between January 1, 2014 and April 1, 2015, for a misdemeanor offense committed prior to January 1, 2014, and to whom the new DNA surcharge law required them to pay a DNA surcharge but not submit a DNA sample and who have paid money toward the DNA surcharge.

**Jailed Class**

Plaintiff Taylor J. Claybrook seeks to represent a class of individuals who were either sentenced or placed on probation by a Wisconsin circuit court between January 1, 2014 and April 1, 2015, for a misdemeanor offense committed prior to January 1, 2014, and to whom the new DNA surcharge law required them to pay a DNA surcharge but not submit a DNA sample and who were arrested and imprisoned in jail because they had an outstanding balance remaining on their DNA surcharge or who had paid their DNA surcharge but were arrested and imprisoned in jail because they had an outstanding balance remaining on their case in which the DNA surcharge was paid.

88.     Plaintiffs reserve the right to redefine the Classes prior to certification.

89.     Members of the classes on whose behalf Plaintiffs sue are so numerous that joinder of all members is impractical. The damages suffered by individual class members are small relative to the cost and complexity of the litigation. As a result, the expense and burden of individual litigation make it economically infeasible and procedurally impracticable for every class member to seek redress individually. There are more than 10,000 individuals that meet the above described class descriptions.

90.     There are questions of law or fact common to all class members and predominate over any individual issues of class members. Among these common questions are whether the Defendants' actions constitute violations of the class members' rights to be free from any *ex post facto* punishment under Article I, Section 10 and the Fourteenth Amendment of the United States Constitution; and to be free from deprivation of property without procedural and substantive due process under the Fourteenth Amendments to the United States Constitution.

91.     Plaintiffs' claims are typical of the claims of the Classes. They arise from the same unconstitutional DNA surcharge law and the same practices and courses of conduct that give rise to the claims of the other class members.

92.     Plaintiffs can fairly and adequately represent and protect the interests of the class members. Plaintiffs have no conflict with the other class members. Class counsel are experienced in both civil rights litigation and class action lawsuits. Plaintiffs and counsel are committed to vigorously prosecuting this action on behalf of the classes.

93.     A class action is superior to other available means for the fair and efficient adjudication of the claims of the Classes. Each individual Class member may lack the resources to undergo the burden and expense associated with individually prosecuting the complex, expensive, and extensive litigation necessary to establish Defendants' liability and obtain adequate relief. Individualized litigation increases the expense and delay for all parties and multiplies the burden on the judicial system in handling the legal issues present in this case. Individualized litigation also presents the potential for inconsistent and contradictory judgments. Conversely, a class action presents far fewer practical difficulties and provides several benefits, including single and efficient adjudication. Class treatment of the issues present in this case will ensure that each claimant receives a fair and consistent adjudication.

## COUNT I
### (42 U.S.C. § 1983 Claim for Failure to Intervene to Prevent an Ex Post Facto Punishment)

94.     Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

95.     By their conduct, as described herein, Defendants are liable to Plaintiffs and the class members under 42 U.S.C. § 1983 for the violation, under color of state law,

of the constitutional right to be free from any *ex post facto* punishment under Article I, Section 10 and the Fourteenth Amendment of the United States Constitution.

96.     The Defendants individually, jointly, and/or in conspiracy, knew that the DNA surcharge statute was unconstitutional as applied to Plaintiffs and class members and that unless they intervened, individuals they supervised would engage in and were engaged in a widespread pattern and practice of applying the unconstitutional DNA surcharge law, which violated Plaintiffs' and the class members' right to be free from any *ex post facto* punishment, yet they failed to intervene and instead facilitated, approved, condoned, turned a blind eye to, ratified and/or purposely ignored their subordinates' widespread pattern and practice of violating Plaintiffs' and the class members' constitutional rights.

97.     Defendants individually, jointly, and/or in conspiracy, had the opportunity, duty and ability to intervene on behalf of Plaintiffs and class members to prevent the widespread pattern and practice of violating Plaintiffs' and class members' right to be free from any *ex post facto* punishment, but failed to do so.

98.     Defendants acted recklessly and/or with callous indifference to the federally protected rights of Plaintiffs and the class members.

99.     As a direct and proximate result of these Defendants' unlawful actions, Plaintiffs and the class members have suffered, and will continue to suffer damages.

## COUNT II

**(42 U.S.C. § 1983 Claim for Failure to Intervene to Prevent Deprivation of Property without Procedural Due Process)**

100.     Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

101.     Plaintiffs' and the class members' money that was used to pay the DNA surcharge constitutes a property interest protected by the Due Process Clause of the United States Constitution.

102.     The DNA surcharge law's retroactive application as applied to Plaintiffs and the class members provided no substantive predicates to govern its application nor any opportunity to be heard in a meaningful manner. Instead, the Act mandated the outcome of requiring Plaintiffs and the class members to pay the DNA surcharge.

103.     By their conduct, as described herein, Defendants are liable to Plaintiffs and the class members under 42 U.S.C. § 1983 for the violation, under color of state law, of the constitutional right to be free from any deprivation of property without procedural due process under the Fourteenth Amendment to the United States Constitution.

104.     The Defendants individually, jointly, and/or in conspiracy, knew that the DNA surcharge statute was unconstitutional as applied to Plaintiffs and class members and that unless they intervened, individuals they supervised would engage in and were engaged in a widespread pattern and practice of applying the unconstitutional DNA surcharge law, which violated Plaintiffs' and the class members' right to procedural due process, yet they failed to intervene and instead facilitated, approved, condoned, turned

a blind eye to, ratified and/or purposely ignored their subordinates' widespread pattern and practice of violating Plaintiffs' and the class members' constitutional rights.

105.    Defendants individually, jointly, and/or in conspiracy, had the opportunity, duty and ability to intervene on behalf of Plaintiffs and class members to prevent the widespread pattern and practice of violating Plaintiffs' and class members' right to procedural due process, but failed to do so.

106.    Defendants acted recklessly and/or with callous indifference to the federally protected rights of Plaintiffs and the class members.

107.    As a direct and proximate result of these Defendants' unlawful action, Plaintiffs and the class members have suffered, and will continue to suffer damages.

## COUNT III
### (42 U.S.C. § 1983 Claim for Failure to Intervene to Prevent Deprivation of Property without Substantive Due Process)

108.    Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

109.    The DNA surcharge required to be imposed on Plaintiffs and the class members by the Act is not rationally related to a legitimate state interest because it bears no rational connection to the cost of performing DNA analysis and maintaining a DNA database, as Plaintiffs and the class members could not be ordered to submit any DNA sample.

110.    Plaintiffs and the class members have a substantive due process right to not be required to pay a retroactively imposed DNA surcharge that bore no rational connection to its stated purpose.

35

111. By their conduct, as described herein, Defendants are liable to Plaintiffs and the class members under 42 U.S.C. § 1983 for the violation, under color of state law, of the constitutional right to be free from any from deprivation of property without substantive due process under the Fourteenth Amendment to the United States Constitution.

112. The Defendants individually, jointly, and/or in conspiracy, knew that the DNA surcharge statute was unconstitutional as applied to Plaintiffs and class members and that unless they intervened, individuals they supervised would engage in and were engaged in a widespread pattern and practice of applying the unconstitutional DNA surcharge law, which violated Plaintiffs' and the class members' right to substantive due process, yet they failed to intervene and instead facilitated, approved, condoned, turned a blind eye to, ratified and/or purposely ignored their subordinates' widespread pattern and practice of violating Plaintiffs' and the class members' constitutional rights.

113. Defendants individually, jointly, and/or in conspiracy, had the opportunity, duty and ability to intervene on behalf of Plaintiffs and class members to prevent the widespread pattern and practice of violating Plaintiffs' and class members' right to be free from deprivation of property without substantive due process, but failed to do so.

114. Defendants acted recklessly and/or with callous indifference to the federally protected rights of Plaintiffs and the class members.

115. As a direct and proximate result of Defendants' unlawful action, Plaintiffs and the class members have suffered, and will continue to suffer damages.

## COUNT IV
### (42 U.S.C. § 1983 Claim for Conspiracy)

116.    Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

117.    Defendants engaged in a concerted action to fund Department of Justice DNA analysis program by unlawful means in violation of Plaintiffs' and the class members' rights under Article I, Section 10 of the United States Constitution and the Fourteenth Amendment to the United States Constitution.

118.    By their conduct, as described herein, Defendants are liable to Plaintiffs and the class members under 42 U.S.C. § 1983 for the violation, under color of state law, of their constitutional right to be free from any *ex post facto* punishment under Article I, Section 10 and the Fourteenth Amendment of the United States Constitution, of the constitutional right to be free from deprivation of property without procedural due process under the Fourteenth Amendment to the United States Constitution, and of the constitutional right to be free from deprivation of property without substantive due process under the Fourteenth Amendment to the United States Constitution.

119.    As a direct and proximate result of Defendants' unlawful actions, Plaintiffs and the class members have suffered, and will continue to suffer damages.

## COUNT V
### (State Law Claim for Indemnification)

120.    Plaintiffs reallege and incorporate by reference all of the allegations in all of the preceding paragraphs.

121.     Wisconsin law, Wisc. Stat. § 895.46, requires public entities to pay any tort judgment for damages which employees are liable for acts within the scope of their employment.

122.     At all times relevant to this action, Defendants committed the acts alleged above in their scope as state actors or within the scope of their employment with the State of Wisconsin.

WHEREFORE, plaintiffs request that the Court enter the following judgment on behalf of themselves and the class members:

A.   Certification of the classes pursuant to Rule 23 of the Federal Rules of Civil Procedure and adjudging Plaintiffs and their counsel to be adequate representatives thereof;

B.   Compensatory and punitive damages against Defendants, attorneys' fees and costs, as well as any other relief the Court deems appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on behalf of themselves and the class members, pursuant to Fed. R. Civ. P. 38(b), on all issues so triable.

Respectfully submitted,

Dated: March 7, 2018

_/s/ John H. Bradley_____
John H. Bradley
Strang Bradley, LLC
33 E. Main St., Ste. 400
Madison, WI 53703
(608) 535-1550
John@StrangBradley.com


Ben H. Elson
G. Flint Taylor
People's Law Office
1180 N. Milwaukee Ave.
Chicago IL 60642
(773) 235-0070
ben.elson79@gmail.com
flint.taylor10@gmail.com

Attorneys for Plaintiffs