Jacob M. Fish, *et al.*,
individually, and on behalf of all
others similarly situated,

       *Plaintiffs,*

           *v.*               Case No. 2:18-cv-350

Brad D. Schimel,
in his individual capacity, *et al.*,

       *Defendants.*

## MEMORANDUM IN SUPPORT OF PLAINTIFFS'
## MOTION FOR CLASS CERTIFICATION

### INTRODUCTION

In 2013, the Wisconsin Department of Justice, under the direction of Defendant

Wisconsin Attorney General J.B. Van Hollen, began to take steps to implement its new

plan to collect DNA samples from everyone convicted of a crime in Wisconsin. To that

end, Defendant Van Hollen specifically requested that the Wisconsin legislature amend

the DNA surcharge law, WIS. STAT. § 973.046, to require DNA samples to be collected

upon conviction for all individuals. To fund this new expanded DNA collection

program, Defendant Van Hollen specifically requested that the new law require anyone

convicted of a misdemeanor pay a $200 surcharge but not submit a DNA sample for a

15-month period of time in order to build up funding for the new DNA program, and

then after the 15-month period of collecting surcharges the new law would require

anyone convicted of a misdemeanor to both pay the $200 surcharge and submit a DNA

sample for analysis. Defendant Van Hollen requested that the new DNA surcharge scheme be structured in this manner so that funding for the Department of Justice's expanded DNA analysis program would not have to come from the State of Wisconsin or the Department of Justice budget but instead from Plaintiffs and class members who were convicted of a misdemeanor and who did not have to submit a DNA sample for analysis over a 15-month period of time.

Defendant Van Hollen specifically requested that the legislature amend the DNA law to require circuit courts to apply the DNA surcharge for each conviction for a misdemeanor solely based on whether the individual was sentenced or placed on probation on or after January 1, 2014. The new DNA law did not address the issue of when the misdemeanor offense occurred, or exempt the imposition of the DNA surcharge for people who committed an offense prior to the law's effective date of January 1, 2014, which would have created a significant delay in funding and thus a significant delay in the Department of Justice's plan to implement its program to increase the collection of DNA samples by April 1, 2015. Because the new DNA surcharge law requested by Defendant Van Hollen instructed courts to apply the DNA surcharge based on conviction date rather than the date of the offense, the retroactive application of the DNA surcharge, as applied to the Plaintiffs and class members, inflicted a greater punishment than the law annexed to the crime at the time the offense was committed and thus constituted an *ex post facto* punishment in violation of Article I, Section 10 of the United States Constitution. Furthermore, some circuit court judges throughout the state issued arrest and commitment orders instructing any law

enforcement officer to arrest and detain in jail Plaintiffs and class members based on their failure to pay the unconstitutional DNA surcharges imposed pursuant to the new DNA surcharge law.

The Wisconsin Department of Justice, under the supervision and direction of Defendant Van Hollen and his successor Defendant Brad Schimel, did nothing to stem the flow of millions of dollars, from Plaintiffs and class members, into the coffers of the Department of Justice, all the while knowing that the money they were receiving was being illegally taken from Plaintiffs and class members.

Shortly before the new DNA surcharge law went into effect, Defendants Directors of State Court and Judicial Administrative District Chief Judges each became aware that the DNA surcharge as applied to Plaintiffs and the class members violated the *ex post facto* clause, and they each had a realistic opportunity, duty and the authority to prevent the violations of Plaintiffs' and the class members' constitutional rights, or to end the injury and cure the constitutional violations of Plaintiffs' and the class members' constitutional rights, yet failed to do so. These Defendants' failure to act, including but not limited to their failure to intervene or take any of the actions outlined in the complaint, along with their failure to properly supervise and train those they are charged with supervising, violated Plaintiffs' and the class members' constitutional rights and caused their injuries.

Plaintiffs seek certification of the below defined classes, whose members seek compensatory and punitive damages against the Defendants.

# PROPOSED PLAINTIFFS' CLASSES

**Paid Class**

Plaintiffs Jacob M. Fish and Tomick T. Copeland seek to represent a class of individuals who were either sentenced or placed on probation by a Wisconsin circuit court between January 1, 2014 and April 1, 2015, for a misdemeanor offense committed prior to January 1, 2014, and to whom the new DNA surcharge law required them to pay a DNA surcharge but not submit a DNA sample and who have paid money toward the DNA surcharge.

**Jailed Class**

Plaintiff Taylor J. Claybrook seeks to represent a class of individuals who were either sentenced or placed on probation by a Wisconsin circuit court between January 1, 2014 and April 1, 2015, for a misdemeanor offense committed prior to January 1, 2014, and to whom the new DNA surcharge law required them to pay a DNA surcharge but not submit a DNA sample and who were arrested and imprisoned in jail because they had an outstanding balance remaining on their DNA surcharge or who had paid their DNA surcharge but were arrested and imprisoned in jail because they had an outstanding balance remaining on their case in which the DNA surcharge was paid.

Plaintiffs meet the class certification requirements under Rules 23(a) and 23(b)(3). First, the class members are sufficiently numerous such that joinder of all parties would be impracticable. Second, common questions of law and fact regarding the Defendants' unconstitutional acts and practices apply equally to all Plaintiffs and to all potential members of the classes. Third, the individual representative Plaintiffs' claims are typical of the classes they seek to represent — they have all been harmed as a result of the Defendants' unconstitutional acts and seek damages for past harm. Fourth, Plaintiffs will adequately protect the interests of the class they seek to represent because they seek relief that will apply to each member of the class. Finally, awarding damages for Paid and Jailed Classes is the appropriate remedy.

## FACTUAL BACKGROUND

Plaintiffs filed this lawsuit on March 7, 2018 as a putative class action on behalf of themselves, and all other individuals whose constitutional rights were violated by Defendants' failure to intervene and supervise subordinates to prevent the application of the new unconstitutional DNA surcharge law and their conspiracy to fund the Department of Justice DNA analysis program by unlawful means. Plaintiffs allege that as applied to Plaintiffs and class members the new DNA surcharge law constituted an *ex post facto* punishment in violation of their constitutional rights. Plaintiffs further allege that the DNA surcharge constituted a deprivation of property without substantive or procedural due process in violation of Plaintiffs' and class members' constitutional rights.

Plaintiffs claim that Defendants individually, jointly, and/or in conspiracy, knew that the DNA surcharge statute was unconstitutional as applied to Plaintiffs and class members and that unless they intervened, individuals they supervised would engage in and were engaged in a widespread pattern and practice of applying the unconstitutional DNA surcharge law, which violated Plaintiffs' and the class members' constitutional rights, yet they failed to intervene and instead facilitated, approved, condoned, turned a blind eye to, ratified and/or purposely ignored their subordinates' widespread pattern and practice of violating Plaintiffs' and the class members' constitutional rights.

This lawsuit seeks compensatory and punitive damages for class members who have paid the DNA surcharge and spent time in jail for failure to pay the unconstitutional DNA surcharge.

Plaintiff Jacob M. Fish was charged in Milwaukee County Case No. 2013CF002683 for committing an act on June 10, 2013. On May 13, 2014, Fish was sentenced for a misdemeanor conviction and ordered to pay a zero dollar fine and costs. Pursuant to the new DNA surcharge law, Fish paid the $200 DNA surcharge, but was not ordered to and did not submit a DNA sample. Ex. 1, Bradley Dec. ¶ 3.

Plaintiff Tomick T. Copeland was charged in Milwaukee County Case No. 2013CF004215 for committing an act on September 7, 2013. On March 24, 2014, Copeland was sentenced and ordered to pay a zero dollar fine and costs. Pursuant to the new DNA surcharge law, Copeland paid the $200 DNA surcharge, but was not ordered to and did not submit a DNA sample. Ex. 1, Bradley Dec. ¶ 3.

Plaintiff Taylor J. Claybrook was charged in Racine County Case No. 2013CM002414 for committing an act on November 13, 2013. On February 3, 2014, Claybrook was sentenced and ordered to pay a $200 fine and costs. Pursuant to the new DNA surcharge law, Claybrook was required to pay the $200 DNA surcharge, but was not ordered to and did not submit a DNA sample. However, Claybrook did not pay the $200 DNA surcharge. On May 12, 2015, an arrest and commitment order was issued ordering the arrest of Claybrook for failure to pay the outstanding fine and DNA surcharge. On July 21, 2015, Claybrook was arrested and imprisoned in jail for 10 days based on his failure to pay his outstanding fine and court costs, which included an

unpaid portion of the $200 DNA surcharge, the 10 days serviced equal approximately one day of jail for every $50 of his fine and DNA surcharge outstanding pursuant to WIS. STAT. § 973.07. Claybrook served two days in jail based on the illegally imposed $200 DNA surcharge. Ex. 1, Bradley Dec. ¶ 3.

On February 6, 2015, the State of Wisconsin, by the Ozaukee County District Attorney acting under the supervision and direction of the Wisconsin Department of Justice and Defendant Schimel pursuant to WIS. STAT. §§ 165.25(1) and 978.05(5), conceded in a public court filing to the Wisconsin court of appeals in the case *State v. Elward*, 866 N.W.2d 756 (Wis. Ct. App. 2015), that the application of the new DNA surcharge law to the class of individuals that includes the Plaintiffs and class members in this action was unconstitutional and violated their constitutional rights. Specifically, the State's brief conceded that "the DNA surcharge violates the *ex post facto* clause when applied to defendants like Elward whose offense date preceeds [sic] the surcharge's January 1, 2014, effective date and who are convicted before the April 1, 2015, effective date for collecting DNA samples." Brief of Plaintiff-Respondent, *State v. Elward*. Ex. 2, Bradley Dec. ¶ 5. On May 20, 2015, the Wisconsin court of appeals decided *Elward*, accepting the state's concession and holding that application of the new DNA surcharge law to the class of individuals that includes the Plaintiffs in this action was an unconstitutional *ex post facto* violation.

Even before discovery has commenced, in addition to the State of Wisconsin and the Department of Justice conceding the new DNA surcharge law as applied to the Plaintiffs and class members violates their constitutional rights, Plaintiffs have

significant proof of systematic and widespread practices of Defendants violating the constitutional rights of more than 10,000 class members throughout the state. Defendants produced records to Plaintiffs' counsel in response to requests under the Wisconsin Open Records Law, Wis. Stat. §§ 19.31 et seq. These records reflect Defendants' knowledge that circuit courts throughout the state were engaged in a widespread pattern and practice of applying the new DNA surcharge law in violation of Plaintiffs' and class members' constitutional rights.

For example, documents produced by Defendants show, *inter alia*, that:

- on December 27, 2013, Defendant A. John Voelker, former Director of State Courts, sent a memo to all circuit court judges and clerks of court throughout the state discussing the *ex post facto* problem with the new DNA surcharge law, supporting the conclusion that all circuit court judges and clerks of court throughout the state were aware of the *ex post facto* problem prior to January 1, 2014, the effective date of the DNA surcharge statute.

- on January 10, 2014, Defendant Chief Judges, and District Court Administrators met with Defendant Voelker in which it was discussed that Defendant Van Hollen was aware of the *ex post facto* problem with the DNA surcharge law. At this meeting Defendant Chief Judges collectively decided that although the statute instructed the circuit court judge to impose the DNA surcharge for each misdemeanor conviction that they

would impose the DNA surcharge per case and based on the conviction date.

- on January 16, 2014, the Kenosha Circuit Court along with Kenosha Clerk of Court Rebecca Matoska-Mentink and Kenosha District Attorney Robert Zapf held a meeting that was chaired by Defendant Chief Judge Mary Wagner where she recommended that Kenosha County Circuit Court judges impose the new DNA surcharge law once per case rather than as the law is written, which requires the DNA surcharge to be imposed on each count within a case. Despite their discussing that the DNA surcharge law presented an *ex post facto* problem, the judges agreed at this meeting that they would impose the new DNA surcharge on any conviction after January 1, 2014, regardless of whether the date of the offense was before January 1, 2014.

Additional documents obtained from Defendants show that after the unconstitutional DNA surcharge law was applied to thousands of individuals and the Wisconsin Court of Appeals had ruled that the DNA surcharge law was unconstitutional in *Elward*, the Defendants knew they had the authority and ability to prevent the future collection of unconstitutional DNA surcharges as well as return previously collected unconstitutional DNA surcharges, yet failed to do so.

## ARGUMENT

To obtain class certification, plaintiffs must satisfy the requirements of Rule 23(a) -- numerosity, commonality, typicality, and adequacy of representation — and one of

the three subsections of Rule 23(b). See *Messner v. Northshore University Healthsystem*, 669 F.3d 802, 808 (7th Cir. 2012). Satisfaction of Rule 23 requirements entitles plaintiffs to pursue their claims as a class action. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 398-99 (2009). Failing to meet these requirements precludes certification. *Id.*

A district court should conduct a "rigorous analysis" to determine whether class certification is warranted and may consider the merits of the claims in doing so. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S 338, 351 (2011) (citation omitted); *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008). However, "[i]n conducting this analysis, the court should not turn the class certification proceedings into a dress rehearsal for the trial on the merits." *Messner*, 669 F.3d at 811 (citing *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010); *Kohen v. Pacific Investment Management Co.*, 571 F.3d 672, 677 (7th Cir. 2009); *Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002)). Further, "merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Bell v. PNC Bank, Nat. Ass'n.*, 800 F.3d 360, 376 (7th Cir. 2015) (citation omitted).

Plaintiffs' burden of proving disputed Rule 23 requirements is the preponderance of the evidence standard. *Messner*, 669 F.3d at 811. District courts have broad discretion in determining whether this burden has been met. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979).

## A. The Classes Satisfy the Certification Requirements of Rule 23(a).

For the reasons stated below, the classes meet all of the requirements of Rule 23(a).

### 1. The class members are so numerous that joinder of all members is impracticable.

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Plaintiffs are not required to determine the exact number or identity of class members. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954, 957 (7th Cir. 1989). Counsel for Plaintiffs have a list containing the county, case number, and identity of individuals and payment details from which members of the Paid Class can be estimated. Defendant Schimel also has a separately compiled list containing the same information as well as additional identifying information.

Courts are permitted to "make common-sense assumptions in determining numerosity." *McCabe v. Crawford & Co.*, 210 F.R.D. 631, 644 (N.D. Ill. 2002). Although there is no number requiring or barring a finding of numerosity, a class including more than 40 members is generally believed to be sufficient." *Barragan v. Evanger's Dog and Cat Food Co., Inc.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009). "[A] class can be certified without determination of its size, so long as it's reasonable to believe it [is] large enough to make joinder impracticable and thus justify a class action suit." *Arnold Chapman and Paldo Sign & Display Co. v. Wagener Equities, Inc.*, 747 F.3d 489, 492 (7th Cir. 2014).

Here, the proposed Paid Class contains approximately 11,208 individuals and the Jailed Class contains approximately 500 individuals, making joinder of individual plaintiffs impracticable. Bradley Dec. ¶ 4.

### 2. Common questions of law and fact apply to the classes.

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Individual class members' claims are common if a defendant engages in standardized conduct towards members of the proposed class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). Here, Defendants engaged in standardized and systematic conduct toward members of the classes and each class in this case shares factual circumstances and legal questions in common. "A common nucleus of operative fact is usually enough to satisfy the commonality requirement of Rule 23(a)(2)." *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992).

Here, factual questions common to individual named Plaintiffs and all class members include, but are not limited to: whether individuals committed an offense prior to January 1, 2014, for which they were subsequently sentenced or placed on probation between January 1, 2014 and April 1, 2015; whether the DNA surcharge law required individuals to pay a $200 DNA surcharge, but not to submit any DNA sample; whether individuals have paid the $200 DNA surcharge; and whether individuals have been imprisoned based on their failure to pay the surcharge as required by the DNA surcharge law.

Legal questions common to individual named Plaintiffs and all class members include, but are not limited to: whether the DNA surcharge law as applied to Plaintiffs and the class is an *ex post facto* punishment; whether the DNA surcharge as applied to Plaintiffs and the class is a deprivation of property without procedural or substantive due process; whether Defendants knew that the individuals they supervised were

engaged in a pattern and practice of violating Plaintiffs' and the class members' constitutional rights; whether Defendants had the opportunity, duty and ability to intervene to prevent the pattern and practice of violating Plaintiffs' and class and members' rights; and whether Plaintiffs and other class members are entitled to damages.

A class action will produce identical answers to these common questions of law and fact for all members of the classes. Therefore, a class action is the appropriate mechanism to resolve Plaintiffs' and class members' claims.

### 3. The claims of the representative Plaintiffs are typical of the claims of the class members.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Retired Chicago Police Association v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993) (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983), *overruled on other grounds by Green v. Mansour*, 474 U.S. 64 (1985)). See also *Arreola v. Godinez*, 546 F.3d 788, 798 (7th Cir. 2008). The claims do not have to be factually identical; instead, the focus is on the defendant's conduct and plaintiff's legal theory. *Id*.

The typicality requirement is met when the named representative's claims are essentially the same as those of the class at large, and arise from the same course of conduct giving rise to the claims of other class members. *General Telephone v. Falcon*, 457 U.S. 147 (1982); *De La Fuente*, 713 F.2d at 232; *Retired Chicago Police*, 7 F.3d at 597 ("The

typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact."). The question of typicality is related closely to commonality. *Rosario*, 963 F.2d at 1018.

As long as the nature of the class representative's claim is similar to those asserted on behalf of the class, it does not matter that the specific facts bringing the various class members into contact with the defendant differ somewhat. With respect to the proposed classes, each of the class representatives had their constitutional rights violated when the DNA surcharge law, as applied to them, constituted an *ex post facto* punishment. Each of the individual class representatives have had their constitutional rights violated by Defendants' failure to intervene and failure to supervise to prevent both the application of the unconstitutional DNA surcharge law and the collection of the unconstitutional DNA surcharge. Each individual class representative has the same legal claims to assert based on the same legal theories against the defendants as the class members. Similarly, it is assumed the defendants have the same defenses against the individual class representatives as they would against all class members.

Minor factual differences between individual class representatives and class members do not undermine the uniformity of Defendants' unconstitutional acts, to which all class members were equally subject to. While the specific amount of payment made toward a DNA surcharge in the Paid Class or the specific length of time spent in jail for failure to pay the unconstitutional DNA surcharge in the Jailed Class may differ among the class members, all claims of all class members arise from the

unconstitutional DNA surcharge law as applied to them and Defendants' failure to intervene and supervise.

Accordingly, the claims of the class representatives are typical of the proposed Class, and typicality is established pursuant to Rule 23(a)(3).

### 4. The named Plaintiffs and class counsel will fairly and adequately protect the interests of the class.

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The Rule 23(a)(4) inquiry "consists of two parts: (1) the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests, and (2) the adequacy of the proposed class counsel." *Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 592 (7th Cir. 2011) (citation omitted).

"To establish that they will represent the interests of the class fairly and adequately, class representatives must show that their claims are not antagonistic to those of the proposed class or in conflict with them, that they have sufficient interest in the outcome of the  case." *Bauer v. Kraft Foods Glob., Inc.*, 277 F.R.D. 558, 562 (W.D. Wis. 2012). The requirement that the class representative be adequate is relatively modest and will generally be satisfied if the plaintiff does not have interests that are antagonistic to those of the other class members. *Reliable Money Order, Inc. v. McKnight Sales Co., Inc.*, 281 F.R.D. 327, 333 (E.D. Wis. 2012) aff'd, 704 F.3d 489 (7th Cir. 2013)).

In the present case, Plaintiffs have a common interest with the class members in recovering damages from Defendants. Plaintiffs do not have conflicting interests with other class members. Plaintiffs also have a sufficient interest in the outcome of the case

because they have all experienced a similar violation of their constitutional rights and the Paid and Jailed class members have a shared interest in being compensated from the DNA surcharges that were unconstitutionally collected from them or for the time they spent in jail because of the unconstitutionally applied DNA surcharge law.

In appointing class counsel, the court must consider "the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Plaintiffs' attorneys are experienced counsel who have worked hundreds of hours identifying the separate classes and members who fit within those classes, researching the facts and legal theories supporting Plaintiffs' numerous claims in this case. Plaintiffs are represented by attorneys from Strang Bradley, LLC and People's Law Office, law firms with many years of experience in complex civil rights, criminal defense and class action litigation.

Plaintiffs meet the adequacy of representation requirement of subsection Rule 23(a)(4).

**B. The Plaintiffs' Paid Class and Jailed Class should be certified under Rule 23(b)(3).**

In addition to the Rule 23(a) prerequisites, a class must also meet one of the subsections of Rule 23(b) to be certified. Rule 23(b)(3) allows for certification if the Court

finds "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance requirement is satisfied when "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815 (alterations in original) (citing Wright & Miller, *Federal Practice & Procedure* § 1778 (3d ed. 2011)).

> This predominance requirement is meant to test whether proposed classes are sufficiently cohesive to warrant adjudication by representation, but it scarcely demands commonality as to all questions. In particular, when adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied even if damages are not provable in the aggregate.

*Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chicago*, 797 F.3d 426, 444 (7th Cir. 2015) (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013) (internal citations omitted)). Courts weigh the predominance and superiority issues against individual class member's interest in going it alone. *Amchem*, 521 U.S. at 616.

Common questions predominate here as all Paid and Jailed class members share the common factual link that they were all required to pay and either did pay an unconstitutional DNA surcharge or they were arrested and imprisoned for their failure to pay the unconstitutional DNA surcharge. All members of both the Paid and Jailed Classes share the same constitutional violations and damages claims within their class which are capable of collective resolution; and all class members have significant interests in proceeding together as a class rather than as individuals.

Proceeding as a class action will facilitate the fair and efficient resolution of all class members' claims. Given that Plaintiffs are aware of tens of thousands of class members falling under the defined classes, the class device is the most efficient and fair means of adjudicating these numerous claims.

Rule 23(b)(3) guides courts in making the predominance and superiority determinations by setting forth the following factors to consider: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action. Fed. R. Civ. P. 23(b)(3)(A)—(D). Here, each of these considerations cut in favor of finding predominance and the superiority of proceeding with this case as a class action.

## 1. Class members have no interest in individually controlling prosecution of this case.

This class action will proceed only as a class action because the stake any individual class member has in the case is too small to justify separate litigation. Under these circumstances, it is clear that class members have no interest in prosecuting separate claims and that a class is the superior litigation device. As the Supreme Court has recognized, where claims are small, "most of the plaintiffs would have no realistic day in court if a class action were not available." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). *See also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 158 (1974) ("Economic

reality dictates that petitioner's suit proceed as a class action or not at all."). Likewise, the Seventh Circuit has explained:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Mace v. Van Ru Credit Corp.,* 109 F.3d 338, 344 (7th Cir. 1997).

This factor favors the Court finding that Rule 23(b)(3) requirements of commonality and superiority are met.

### 2. There is no other litigation pending concerning this controversy against these Defendants.

Plaintiffs' undersigned counsel are aware of no other cases addressing the claims raised in this case, or any cases that raise claims related to the widespread imposition of unconstitutional DNA surcharges against the named Defendants in this case. One of Plaintiffs' undersigned counsel does represent plaintiffs in a much more limited putative class action involving the unconstitutional taking of DNA surcharges for criminal defendant's bail money in *Ward v. State*, No. 2016AP001687 (Wis. Ct. App.) (interlocutory appeal pending). However, the *Ward* case involves a taking claim under the Wisconsin Constitution, and does not include any of the claims brought in the present case, nor does it include any of the same defendants or any damages claims. Therefore proceeding with the present case does not require multiple courts to weigh the same factual and legal grounds for recovery. The plaintiffs in *Ward* have not moved for class certification and have not begun any discovery because the plaintiffs in *Ward* have agreed to stay discovery. While it may be desirable to consolidate the class

members' claims from *Ward v. State*, in this single action, sovereign immunity allows the *Ward* Defendant State of Wisconsin to avoid suit in federal district court.

Because there is no such other case involving either the same claims or against the Defendants named in this case, this factor favors the Court finding predominance and superiority. Additionally, Plaintiffs' undersigned counsel are aware of no other cases in which individual plaintiffs are seeking damages related to the widespread application of the unconstitutional DNA surcharge statute, which also weighs in favor of class certification.

Finally, the court has broad discretion to determine whether the proposed class meets the requirements of Rule 23(b)(3) and may modify the proposed class definition if the modification will remedy an inadequate definition. *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003). Should there be any concerns presented by *Ward*, and should the putative class in *Ward* ever be certified, this court may revise the Paid Class or Jailed Class definition to exclude any individuals who fall within the *Ward* class definition.

Therefore the existence of *Ward* does not present any grounds upon which to find that "the extent and nature of any litigation concerning the controversy already begun by or against class members," Fed. R. Civ. P. 23(b)(3)(B). Accordingly, this factor favors the Court finding Rule 23(b)(3) requirements of commonality and superiority are met.

### 3. It is desirable to concentrate the litigation of these claims in this forum.

The considerations of other litigation and the desirability of concentrating litigation in one forum, are related, inasmuch as "the desirability of concentrating

claims in a particular forum is relevant only when other class litigation has already been commenced elsewhere." *Newberg on Class Actions* § 4.31 (3rd ed. 1992) at 4-124.

Again, because there is no such other case involving either the same claims or against the Defendants named in this case, this factor favors the Court finding predominance and superiority. *Culpepper v. Inland Mortg. Corp.*, 189 F.R.D. 668, 674 n.4 (N.D. Ala. 1999) (court noted "[t]here has been no indication that any other litigation on this issue against this defendant has been commenced, although there have been numerous lawsuits challenging the same practice. Consequently, treatment of this action as a class action could determine whether [defendant's] practice is violative of RESPA without subjecting the defendant to duplicative lawsuits.").

Accordingly, this factor favors the Court finding Rule 23(b)(3) requirements of commonality and superiority are met.

### 4. There will be no prohibitive difficulties in managing this class action.

The management factor also favors certification. Class actions are by their nature more complicated than individual actions, but this does not make them unmanageable. Here, with the predominate factual issue being whether the DNA surcharge law as applied to Plaintiffs and class members is unconstitutional, whether an individual has paid the unconstitutionally imposed DNA surcharge and if so how much, and whether an individual has been arrested and imprisons for failure to pay the unconstitutionally imposed DNA surcharge and if so for how long, prohibitive management difficulties of proceeding with the Paid and Jailed Classes are unlikely to arise.

The purpose of the predominance requirement is simply to determine whether the proposed class is sufficiently cohesive to warrant adjudication by representation. *Amchem*, 521 U.S. at 623. The individual members of these classes have no interest in individually litigating these issues, due to the expense required and limited potential individual recoveries. Plaintiffs' undersigned counsel are aware of no other cases addressing the systematic and widespread imposition of unconstitutional DNA surcharges identified in this case, other that the above mentioned *Ward v. State*, which involves a limited class of plaintiffs and none of the Defendants in this case, and is based on an entirely different claim and theory of liability.

In this case, the classes constitutional claims are susceptible to resolution of liability on a class wide basis because the Plaintiffs have limited the issues to whether the DNA surcharge law as applied to Plaintiffs and class members is unconstitutional and whether Defendants are liable based on their concerted action or their failure to intervene or supervise. These liability issues can be decided on a class-wide basis without the need for individualized proof of any particular class member. These issues go to the heart of this case and predominate over any individualized issues.

If the class succeeds on its constitutional claims, determinations of damages suffered by members of the proposed Paid and Jailed Classes will be necessary. However, the existence of variations of individual damages is not sufficient to defeat certification under Rule 23(b)(3). Class certification can be appropriate, even if there are, like here, individual damages for class members "if there are substantial common issues that outweigh the single variable of damage amounts." *Arreola*, 546 F.3d at 801. *See also*

*Young v. Fortis Plastics, LLC,* 294 F.R.D. 128, 139 (N.D. Ind. 2013) ("The cost of medical expenses incurred, which would have otherwise been covered, would require a more individualized treatment, but the Court does not believe the issue is great enough to deter certification under Rule 23(b)(3)"). "[I]t remains the 'black letter rule' that a class may obtain certification under Rule 23(b)(3) when liability questions common to the class predominate over damages questions unique to class members." *Comcast Corp. v. Behrend*, 569 U.S. 27, 42–43 (2013). "Generally, the fact that damages are specific to each individual class member is not a basis for denying class certification." *Wall v. Merrill Lynch, Pierce, Fenner & Smith*, 1992 WL 245540, at *3 (N.D. Ill. Sept. 21, 1992) (citing *Harmon v. Lyphomed, Inc.*, 122 F.R.D. 522, 527 (N.D. Ill. 1988)). "If common questions as to liability predominate, then the issue of liability can be determined on a class-wide basis and, if necessary, damages can then be determined on an individual basis." *Id.* (citing *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669, 675 (N.D. Ill. 1989). As the Seventh Circuit has recognized "Rule 23 allows district courts to devise imaginative solutions to problems created by the presence in a class action litigation of individual damages issues." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). Those solutions can include the reinstitution of settlement proceedings after a finding of liability and the appointment of a special master or magistrate to determine individual damages. *Id.*

The Seventh Circuit has stated that potential limited recoveries of individual class members should not bar class certification when a class action would be an effective mechanism for resolving claims that individuals might otherwise not pursue

because of the burdens of litigation and the relatively limited potential payoff. *Mace*, 109 F.3d at 344. The Seventh Circuit held that "the smaller the stakes to each victim of unlawful conduct, the greater the economies of class action treatment and the likelier that the class members will receive some money rather than (without a class action) probably nothing, given the difficulty of interesting a lawyer in handling a [modest individual] suit...." *Hughes v. Kore of Ind. Enter.*, 731 F.3d 672, 675 (7th Cir. 2013).

This is a classic case warranting class certification. The common questions of law and fact in this litigation predominate over any questions affecting only individual class members. No other method is available but a class action to collectively and conclusively resolve the substantial questions of the Defendants' liability to thousands of individuals. Certainly it makes little sense in terms of judicial or litigant economy to require these individuals to pursue separate litigation on these issues.

Because class members' individual claims are relatively small, individual class members have little interest in controlling the prosecution of this or any individual cases, and are realistically precluded by the expensive nature of litigation from doing so it is desirable to concentrate the claims of putative class members in this forum. Accordingly, a class action is superior to any other method of adjudication, and this Court should certify the Paid and Jailed Classes pursuant to Rule 23(b)(3).

## CONCLUSION

For the reasons set forth above, the classes satisfy all of the requirements of Rule 23(a) and 23(b)(3).

Accordingly, the Court should certify the case as a class action and appoint the undersigned attorneys as class counsel.

Respectfully submitted,

Dated: March 7, 2018

 /s/ John H. Bradley
John H. Bradley
Strang Bradley, LLC
33 E. Main St., Ste. 400
Madison, WI 53703
(608) 535-1550
John@StrangBradley.com

Ben H. Elson
G. Flint Taylor
People's Law Office
1180 N. Milwaukee Ave.
Chicago IL 60642
(773) 235-0070
ben.elson79@gmail.com
flint.taylor10@gmail.com

Attorneys for Plaintiffs